**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| Brone Maceviciene, | : | |
| Plaintiff | : | |
| v. | : | |
| John Romano and Natalia Romano, | : | August 24, 2017 |
| Defendants | : | |

**COMPLAINT**

**I.   INTRODUCTION**

1.      In this action brought under the federal Fair Labor Standards Act, 29 U.S.C. §201, et seq. (FLSA), and the Connecticut Minimum Wage Act, Conn.Gen.Stat. §31-68 (CMWA), the plaintiff Brone Maceviciene alleges that the defendants John Romano and Natalia Romano coerced her services as a domestic worker for a period totaling six years and eight months and failed to pay her the applicable minimum wage. From on or about July 5, 2010, until on or about March 6, 2017, the defendants relied upon intimidation and physical and psychological abuse to ensure that Maceviciene remained in their employ, typically worked approximately 105 hours a week for no wages. The plaintiff further alleges that the defendants falsely imprisoned her and intentionally inflicted emotional distress upon her by said intimidation and physical and psychological abuse. The plaintiff seeks her unpaid wages; double damages under the FLSA and CMWA; compensatory damages for her emotional distress, pain, and suffering; and her reasonable attorney's fees and costs.

## II.     JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §1331.  With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is appropriate in the District of Connecticut pursuant to 28 U.S.C. §1391(b), because a substantial part of the events giving rise to this claim occurred within this judicial district.

## III.    THE PARTIES

4.      The plaintiff, Brone Maceviciene, resides in Norwalk, Connecticut. At all times relevant to this Complaint the plaintiff was an employee of the defendants as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. §203(e)(1), and by Connecticut General Statutes §31-58(f) and 31-71a(2).

5.      Defendants John Romano and Natalia Romano are husband and wife, and reside at 179 East Rocks Road Norwalk, Connecticut. At all times relevant to this Complaint, the defendants were employers as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. §203(d), and by Connecticut General Statutes §31-58(e) and 31-71a(1).

6.      At all times relevant to the Complaint, the plaintiff was employed in domestic service by the defendants within the meaning of 29 U.S.C. §206(f).

## IV.     FACTS

7.      The plaintiff is a Lithuanian national who entered the United States on a visa on or about May 15, 2010. The plaintiff does not speak or read English, but does understand Russian.

8.     On or about July 5, 2010, the defendants offered to employ the plaintiff in domestic service. Defendant Natalia Romano, who is Russian-speaking, made the offer to the plaintiff.

9.     The defendants represented to the plaintiff that her responsibilities in the position would include caring for an infant child, as well as doing housekeeping and cleaning.

10.    The defendants represented to the plaintiff that she would be paid $100.00 a day for her work and would be provided with her own room.

11.    When the plaintiff began her employment with the defendants, they immediately took her passport away from her and held it.

12.    From on or about July 5, 2010, until on or about March 6, 2017, the plaintiff performed domestic work for the defendants, including caring for their child, and later for both their child and an elderly parent, cleaning the house, doing laundry, and any other household work.

13.    Typically the plaintiff worked from about 7:00am until at least 10:00pm, seven days a week, for a total of about 105 hours each week.

14.    The plaintiff was also responsible for caring for the defendants' child at night, and as a result frequently did not get at least five consecutive hours of uninterrupted sleep a night.

15.    Several years after the plaintiff began working for them, defendant John Romano brought his 92 year old mother to live in the house.

16.    When the defendants hired the plaintiff they had provided her with her own room with a bed, adjacent to their child's room.

17.    After John Romano's mother came to live with them, the plaintiff was required to share a room and a bed with her, and to provide care for her, including at night.

18.    The defendants threatened the plaintiff that if she were to try to leave or to complain to someone about her treatment, they would call the police on her and she would be sent to jail or deported.

19.     Approximately three years after the plaintiff began working for the defendants, John Romano presented the plaintiff with a blank sheet of paper and demanded that she sign her name on the blank sheet. Upon information and belief, the purpose of obtaining the plaintiff's signature was so the defendants could unlawfully seek an extension of her visa.

20.     Defendant Natalia Romano verbally and physically abused the plaintiff, including yelling at her, calling her names, approaching the plaintiff in a threatening manner, and hitting, punching, and kicking her in order to get her to work harder, or simply because Natalia Romano was feeling angry or frustrated.

21.     During the plaintiff's employment, her diet consisted primarily of rice and margarine provided by the defendants. The defendants would often insist on throwing out leftover food rather than allowing the plaintiff to eat it.

22.     During the plaintiff's employment, the defendants paid her for her work on only one occasion. On that occasion, the defendants paid her the sum of $600.00 that she had requested in order to wire to relatives in Lithuania.

23.     Other than the cash payment described above, the only other compensation provided to the plaintiff for her work was, on one occasion, the cost of a pair of eyeglasses, and on another, the cost of temporary dentures. Defendants informed the plaintiff that they would not pay for permanent dentures for her because they were too expensive.

24.     In or about late 2016 or early 2017, the plaintiff met Vira Dupuis, who had been introduced to her through a neighbor of Dupuis' who worked cleaning defendant John Romano's office. Dupuis is Russian-speaking, and also speaks English.

25.     Dupuis, with the assistance of a Special Victims Unit Detective with the Norwalk Police Department, succeeded in removing the plaintiff from the defendants' household and recovering her passport on or about March 6, 2017.

**Count One: Fair Labor Standards Act, Minimum Wage and Overtime Violations**

1. The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 25, above.

26. The plaintiff was, at all times relevant to the Complaint, a "live-in" domestic service employee within the meaning of the federal Fair Labor Standards Act, 29 U.S.C. §201, et seq., and the federal regulations interpreting the statute.

27. The defendants unilaterally determined the plaintiff's sleep time and assigned her duties, including caring for their child and, after a time, caring for an elderly parent, that did not permit her an uninterrupted night's sleep.

28. The plaintiff and the defendants did not have a "reasonable agreement" regarding the exclusion of her sleep time from her hours of employment, as that term is used in 29 C.F.R. §785.23.

29. After defendant John Romano moved his elderly mother into the plaintiff's room, the plaintiff was required to share living space and a bed with her.

30. The defendants did not provide the plaintiff with "private quarters in a homelike environment" as that term is used in Wage & Hour Division Opinion Letter FLSA 2004-7 (July 27, 2004), and Wage & Hour Division Administrator's Interpretation No: 2014-1 (March 27, 2014).

31. At no time during the plaintiff's employment was she "completely free to leave the premises for [her] own purposes and engage in normal private pursuits during all non-duty time other than the sleep time," as described in Wage & Hour Division Opinion Letter FLSA 2004-7 (July 27, 2004), and Wage & Hour Division Administrator's Interpretation No: 2014-1 (March 27, 2014).

32. At no time during the plaintiff's employment was she "paid for all the sleep time if such time is interrupted for duty calls to the extent that the employees cannot get at least five hours of sleep during the period," and "[a]re paid for all work performed during non-sleep time, i.e., duty hours in the mornings, afternoons, evenings, and on weekends." as described in Wage & Hour Division Opinion Letter FLSA 2004-7 (July 27, 2004), and Wage & Hour Division Administrator's Interpretation No: 2014-1 (March 27, 2014).

33. The defendants failed to pay the plaintiff at the applicable minimum wage for all hours worked each week over the course of her employment, as required by 29 U.S.C. §206.

34. The defendants failed to pay the plaintiff one and one-half times the applicable minimum wage for all hours over 40 worked in a one week period for each week over over the course of her employment, as required by 29 U.S.C. §207.

35. Defendants' violations of the minimum wage and overtime requirements of the Fair Labor Standards Act were reckless and/or willful, in that the defendants were aware or reasonably should have been aware of the requirement that they pay the plaintiff according to minimum wage and/or overtime laws and did not do so.

**Count Two: Connecticut minimum wage, overtime, and unpaid wage violations**

1. The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 35, above.

36. The defendants' conduct as described above is in violation of the minimum wage and overtime provisions of the Connecticut Minimum Wage Act, Conn.Gen.Stat. §31-68, et seq.

37. The defendant's conduct as described above is in violation of the Connecticut's wage payment statutes, including but not limited to Conn.Gen.Stat. §31-71a through §31-71e.

38. The plaintiff brings this action against the defendants pursuant to Conn.Gen.Stat. §31-68 and §31-72.

**Count Three: Intentional infliction of emotional distress**

1.     The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 38, above.

39.    The defendants' conduct toward the plaintiff, including but not limited to taking her passport, forcing her to perform services without payment, threatening her with jail or deportation if she attempted to complain or leave, and verbally and physically abusing her, was intentional and/or reckless.

40.    Said conduct was extreme and outrageous.

41.    Said conduct caused the plaintiff to suffer extreme emotional distress.

**Count Four: False imprisonment**

1.     The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 41, above.

42.    The defendants' conduct as described above was intended to and did confine the plaintiff within boundaries set by the defendants.

43.    The defendants' conduct as described above caused the plaintiff to be so confined.

44.    The plaintiff was aware of, and/or suffered harm because of the confinement.

**Count Five: Civil Assault and Battery (as to Natalia Romano)**

1.     The plaintiff re-states, re-alleges, and incorporates by reference paragraphs 1 through 44, above.

45.    Defendant Natalia Romano's actions as described above, including but not limited to verbally abusing the plaintiff, yelling and cursing at the plaintiff, and approaching the plaintiff in a threatening manner were intentional attempts by the defendant to threaten or to inflict injury on the plaintiff.

46.    Defendant Natalia Romano possessed an apparent ability to harm the plaintiff.

47. Defendant Natalia Romano's actions as described above created in the plaintiff a reasonable apprehension of bodily harm or offensive contact.

48. Defendant Natalia Romano's actions as described above, including but not limited to physically abusing, kicking, and punching the plaintiff, constituted an intentional touching of, or application of force to, the body of the plaintiff in a harmful or offensive manner.

49. Defendant Natalia Romano's actions as described above were taken without the plaintiff's consent.

50. As a result of the defendant's actions in threatening and striking the plaintiff she suffered fear, anxiety, upset, and emotional distress.

## PRAYER FOR RELIEF

Wherefore, the plaintiff respectfully requests that the Court find for her as to each of the claims set out above, and enter judgment providing as relief:

1. Award the plaintiff all wages that are owed to her, pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §201, et seq, and/or the Connecticut Minimum Wage Age, Conn.Gen.Stat. §31-68, et seq, and/or Connecticut wage payment statute, Conn.Gen.Stat. §31-72;

2. Award the plaintiff an amount equal to the wages she is owed as liquidated damages pursuant to 29 U.S.C. §216(b);

3. Award the plaintiff an amount equal to the wages she is owed as double damages pursuant to Conn.Gen.Stat. §31-68, and/or §31-72;

4. Award the plaintiff compensatory damages, including but not limited to damages for her physical injuries and emotional distress;

5. Award the plaintiff her reasonable attorney's fees and expenses; and

6. Award such other relief as the Court deems warranted.

RESPECTFULLY SUBMITTED
THE PLAINTIFF, by

_/ s / Peter Goselin_
Peter Goselin ct06074
The Law Office of Peter Goselin
557 Prospect Avenue, 2nd Floor
Hartford, Connecticut 06105
Tel. 860-580-9675
Fax 860-232-7818
pdgoselin@gmail.com